## CARSTARPHEN *v.* THE STATE.

The evidence disclosing that the accused had a perfect legal right, jointly with the prosecutor, to the use of an elevator, and that the latter, in order to prevent the exercise of this right, had placed locks upon the door thereof, the accused in breaking the locks, merely for the purpose of using the elevator, was not guilty of malicious mischief, and the trial judge erred in not setting aside the verdict of guilty and granting a new trial.

Argued November 20, — Decided November 27, 1900.

Accusation of malicious mischief. Before Judge Clark. City court of Forsyth. October term, 1900.

*Persons & Persons* and *Hardeman, Davis & Turner,* for plaintiff in error. *Samuel Rutherford, solicitor,* and *Cabaniss & Willingham* by *E. G. Cabaniss Jr.,* contra.

FISH, J. The accused was convicted of the offense of malicious mischief, and upon his motion for·a new trial being overruled he excepted. It appears from the evidence that Carstarphen, the accused, was the owner of certain mills, known as the Dames Ferry

mills, in Monroe county, part of which he leased to the prosecutor, Davis. From the terms of the lease it appears that "Carstarphen agrees to lease unto Davis, for the period of five years, three rocks to be run in the front part of the Dames Ferry mills, he, Davis, to have the two large mills, and a 48-inch mill which Carstarphen is to have placed on the husk frame already built near the front door, all three of which are to be run by the front water-wheel; Carstarphen guaranteeing sufficient power to run said three mills. Davis has the right to use elevator, cleaner, scales, and sacker, and the exclusive control of the 'Dames Ferry Meal Brand;' in consideration of which, Davis is to pay Carstarphen $8,250.00 for said period of five years. . . Davis is to keep everything in repair and good order. . . Carstarphen is to put in an elevator near the three rocks leased to Davis, with which to convey his meal to his meal bin." At the date of the lease there was a lock on the door of an elevator used for the purpose of carrying grain into the mill-house and also to all the rocks therein. This lock remained upon the door for some six weeks after the lease was entered into, the employees of both the prosecutor and the accused having access to the key and all of them using this elevator. An employee of the prosecutor then removed this lock and the prosecutor had two other locks placed upon this door, the keys to which he gave to his employees, with instructions not to permit the accused, or his employees, to have the keys or to use the elevator. The accused requested the employees of the prosecutor for the use of the keys, which request was refused. Subsequently, having a car of corn which he desired to be carried into the mill-house by the elevator on Monday morning, he, on the Sunday preceding, again asked the employees of the prosecutor for the keys of the locks on the elevator door, and, the request being denied, the accused broke the locks. An employee of the prosecutor, of whom the accused made the last request and who was present when the accused broke the locks, testified: "The reason why the defendant knocked them [the locks] off was because he, the defendant, lived in Macon and had a car-load of corn standing on the track, which he wanted his miller to unload on the following Monday."

We are clearly of opinion that under these facts the accused was not guilty of malicious mischief in breaking the locks, and that the trial judge erred in refusing to grant a new trial. Malice, either

express or implied, is an essential ingredient of the offense of malicious mischief. This is evident from the very name of the offense. The act must be done with wicked or malicious intent or motive—wrongfully and intentionally done—without just cause or excuse. *Wright* v. *State*, 30 *Ga.* 325; 14 Am. & Eng. Enc. L. (1st ed.) 11; Clark's Crim. Law, 290. Under the terms of the lease, the accused had a perfect legal right to use the elevator jointly with the prosecutor, and it appears that they both so construed the lease, by their joint use of the elevator for six weeks after the contract went into effect. The prosecutor, in placing the locks upon the door and denying the use of the keys to the accused, attempted to deprive the accused of his legal right, and the accused broke the locks, not maliciously, but for the purpose of enjoying a right which he reserved under the lease. The State wholly failed to sustain its charge, and, as we have said, the trial judge erred in refusing to set the verdict aside.          *Judgment reversed. All the Justices concurring.*